J. Will Varin
ISB #6981
VARIN WARDWELL LLC
P.O. BOX 1676
Boise, Idaho 83701
Telephone: (208) 922-7060
Facsimile: (866) 717-1758
willvarin@varinwardwell.com

Attorneys for Non-party Witness
Evan Rainwater

U.S. COURTS

MAR 15 2018

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| In re Matter of Deposition Subpoena Served on Evan Rainwater, _____/ | Miscellaneous Case No. 1:18-mc-10051-EJL<br><br>MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA |

## INTRODUCTION

Non-party witness, Evan L. Rainwater, by his attorneys, Varin Wardwell LLC and Ahern and Associates, P.C., provides this Memorandum in Support of his Motion to Quash Deposition Subpoena. A subpoena for deposition and documents was served on Mr. Rainwater on March 1, 2018. (A copy of the deposition subpoena is attached as Exhibit 1.)[1] The motion to quash should be granted because (1) Mr. Rainwater possesses

---

[1] The original return date of March 15, 2018 for the subpoena, has been extended, by agreement of the parties, to March 29, 2018.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA -1-**

no information relevant to the underlying case and sitting for the deposition would cause an undue burden on him, and (2) Defendants, who seek to take Mr. Rainwater's deposition, have failed to comply with the Middle District of Florida's Handbook on Civil Discovery Practice, which is applied by that Court in more than an advisory way.[2]

## BACKGROUND

The underlying action has been brought by Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holding LLC against the Defendants, the largest dairy cooperatives in the United States, for their violation of the antitrust laws – Section 1 of the Sherman Act – for agreeing to restrict the supply of raw milk and thereby increase the price of raw milk, processed milk, and other dairy products, from 2003 through 2010, with damages (increased prices) through 2013.  Plaintiffs allege that the dairy cooperatives used the National Milk Producers Federation to create an entity or program within it, entitled Cooperatives Working Together, which in turn created and ran a supply reduction or management program entitled the Herd Retirement Program.  The CWT raised $490 million through assessments to the cooperatives' dairy farmer members, and spent those funds to pay dairy farmers to slaughter their dairy cow herds, both productive and unproductive cows, early.

---

[2] "The Middle District Discovery Handbook supplements the Federal Rules of Civil Procedure and Local Rules by capturing discovery custom and practice in this district. Handbook at 2. '… it is an expression of generally acceptable discovery practice in the Middle District. … Judges and attorneys practicing in the Middle District should regard the handbook as highly persuasive in addressing discovery issues.' Handbook at 2." *Cake v. Casual Concepts, Inc.*, No. 3:16-CV-102-J-32PDB, 2017 WL 3917001, at *5 (M.D. Fla. Aug. 16, 2017). (A copy of the pertinent pages of the Handbook are attached as Exhibit 2.)

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA -2-**

From before 2003 through April 30, 2008, Winn-Dixie owned its own dairy processing plants, for which it purchased raw milk. From 2002 through 2005, Mr. Rainwater was the Vice President of Manufacturing for Winn-Dixie. However, he has provided a sworn declaration stating that he did not have discussions with any raw milk supplier regarding prices for raw milk, and did not negotiate prices of raw milk, nor any agreements for the supply of raw milk. See Paragraph 3 of the Declaration of Evan L. Rainwater. (A copy of his sworn declaration is attached as Exhibit 3.) In addition, Mr. Rainwater stated that any such discussions with raw milk suppliers, if they took place, would have taken place with Dwight Moore, who reported to Mr. Rainwater. Id. Finally, Mr. Rainwater stated that he had never heard of the CWT or its Herd Retirement Program before receiving the subpoena. Rainwater Decl. ¶ 4.

Notwithstanding the facts in Mr. Rainwater's declaration that would indicate that taking his deposition would be a total waste of time, Defendants insist on taking Mr. Rainwater's deposition because he "had responsibility" for the purchasing of raw milk, and that they are entitled to "probe" his knowledge – nothing more specific than that as to what they would expect to elicit from Mr. Rainwater, given his declaration.

## ANALYSIS

I.  **MR. RAINWATER DOES NOT HAVE INFORMATION RELEVANT TO THE DEPOSITION SUBPOENA AND FORCING HIM TO SIT FOR THE DEPOSITION WOULD CAUSE HIM AN UNDUE BURDEN.**

Under the law of this District, Rule 45 provides that a court must quash a subpoena if it does not seek relevant information from the non-party witness and would cause an undue burden on the non-party witness. Federal Rule of Civil Procedure

MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA -3-

45(c)(3) provides a court *must* quash or modify a subpoena that "subjects a person to undue burden. *F.R.C.P. 45(c)(3)(A)(iv)*; *see also Rocky Mt. Med. Mgmt., LLc v. LHP Hosp. Group, Inc.,* 2013 U.S. Dist. LEXIS 175590, at *6 (D. Idaho 2013). The burden of proving that a subpoena imposes an undue burden is on the person seeking to have it quashed. *Rocky Mt.,* 2013 U.S. Dist. LEXIS 175590, at *6 (citations omitted); *see also 9A Fed. Prac. & Proc. Civ.* § 2459 (3d ed. 2013). However, the party issuing the subpoena must demonstrate, in turn, that the information sought is relevant and material to the allegations and claims at issue in the proceedings. *Rocky Mt.,* 2013 U.S. Dist. LEXIS 175590, at *7; *see also Green v. Baca,* 226 F.R.D. 624, 654 (N.D. Cal. 2005); *United States v. American Optical Co.,* 39 F.R.D. 580, 583 (N.D. Cal. 1966) (a party seeking production must show "good cause,"—that is, that the requested documents are necessary to establish a claim or defense, or that denial of production would be prejudicial). In all controverted cases, it is up to the court to strike a balance among the degree of relevance of the requested material, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules. *Rocky Mt.,* 2013 U.S. Dist. LEXIS 175590, at *7; *9A Fed. Prac. & Proc. Civ.* § 2459 (3d ed. 2013).

In determining whether an undue burden exists the court may consider: (1) the relevance of the information requested; (2) the need of the party requesting the documents; (3) the breadth of the discovery request; (4) the time period covered by the request; (5) the particularity with which the requesting party has described the requested documents; and (6) the burden imposed. *Rocky Mt.,* 2013 U.S. Dist. LEXIS 175590, at

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA -4-**

*9; *Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462, 467 (D.S.D. 2011); *WM High Yield v. O'Hanlon,* 460 F.Supp.2d 891, 895 (S.D. Ind. 2006).

In considering whether the subpoena would unduly burden a non-party witness, a court may consider Mr. Rainwater's status as a non-party. *Rocky Mt.*, 2013 U.S. Dist. LEXIS 175590, at *15.  When deciding discovery disputes, concern for the burden upon non-parties carries "special weight." *Rocky Mt.*, 2013 U.S. Dist. LEXIS 175590, at *15; *see also Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2,* 197 F.3d 922, 927 (8th Cir. 1999) (quotation omitted); *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 179 (E.D.N.Y. 1988)("Of significance ... in balancing the competing hardships [*16] [between disclosure and nondisclosure of the discovery sought] is [an entity's] status as a nonparty to [the] litigation. Under the authorities, this factor is significant in determining whether compliance with a discovery demand would constitute an undue burden.") (quotation and citation omitted); *Jack Frost Laboratories Inc. v. Physicians & Nurses Mfg. Corp.,* 1994 U.S. Dist. LEXIS 261 (S.D.N.Y. 1994) ("The most obvious burden is borne by the non-party witness, and we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others."); *In re Candor Diamond Corp.,* 26 B.R. 847, 849 (Bkrtcy. N.Y. 1983) ("Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information.") (citation omitted).

A court should give weight to a witness' non-party status when assessing Defendants' need for the discovery sought from the non-party witness. *Rocky Mt.*, 2013

U.S. Dist. LEXIS 175590, at *16-17; *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Although *Rule 26(b)* applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances."); *Dart Industries Co., Inc. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (discovery restrictions may be broader when a non-party is the target of discovery); *Travelers Indemnity Co. v. Metropolitan Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (courts give special weight to the burden on non-parties of producing documents to parties involved in litigation.); *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998) ("courts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party is a factor which weighs against disclosure.").

In light of Defendants' ability to obtain the information it seeks from Mr. Moore, who they have already subpoenaed for his deposition, as well as the potential irrelevance of whatever information Mr. Rainwater can impart, particularly given his declaration, his non-party status, and the burden on him to disrupt him from the duties and responsibilities of his current job as a Senior Vice President for Albertsons that would be caused by having to sit for the deposition, this Court should find that the sixth factor – undue burden – weighs in favor of quashing Defendants' subpoena to Mr. Rainwater. *Rocky Mt.*, 2013 U.S. Dist. LEXIS 175590, at *21. As this Court has stated and held, a court "must" quash a subpoena that subjects a person to undue burden, citing F.R.C.P.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA -6-**

45(c)(3)(A)(iv). *Id.* Accordingly, this Court should grant Mr. Rainwater's Motion to Quash the deposition subpoena.[3]

## II. DEFENDANTS HAVE FAILED TO COMPLY WITH THE MIDDLE DISTRICT OF FLORIDA HANDBOOK ON CIVIL DISCOVERY PRACTICE.

Even though Mr. Rainwater's counsel pointed out in detail to Defendants the applicable provisions of the Middle District of Florida's Handbook of Civil Discovery Practice, and what those provisions require of Defendants before they take Mr. Rainwater's deposition, Defendants have failed to comply with the Handbook's provisions.

Specifically, Mr. Rainwater's counsel pointed out the following:

> [Counsel], attached please find the Declaration of Evan Rainwater, submitted in response to the deposition subpoena served on him in this case. The declaration is submitted pursuant to Section II.A. 5 and 6 of the Middle District of Florida Handbook on Civil Discovery Practice. Subsection 5 provides in pertinent part:
>
> **If an Officer Lacks Knowledge.** Whenever an officer, director, or managing agent of an entity is served with a deposition notice or subpoena that contemplates testimony on a subject about which the witness lacks knowledge or information, that individual may submit to the noticing party, reasonably before the date noticed for the deposition, an affidavit or declaration under penalty of perjury so stating …. The noticing party should then proceed with the deposition of the officer, director, or managing agent initially noticed or subpoenaed only after careful consideration and for a specific reason, provided to the deponent in writing in advance of the deposition.

Section 6 provides in pertinent part:

---

[3] Mr. Rainwater has confirmed to his counsel that he does not have any documents responsive to the document requests contained in the document portion of the subpoena. His counsel has informed Defendants of that fact.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA -7-**

> **Consideration for an Organization's Senior Management.** If information is sought from an organization, counsel ordinarily should not seek in the first instance to take the deposition of the organization's senior management if someone else in the organization can be expected to have more direct and firsthand knowledge or information. Depositions are not properly used as a mechanism to inconvenience or distract senior management who may not be immediately involved in the dispute.
>
> In a recent conversation, you indicated that neither provision applied to a non-party, but Subsection 5 clearly references a "deposition subpoena." In addition, there is nothing Subsection 6 which references only a party's senior management.
>
> Finally, Subsection 5 requires the noticing party, after receiving a declaration of an officer, should proceed with the deposition only after careful consideration and for a specific reason, which must be provided to the deponent in writing in advance of the deposition.
>
> In light of all of the above and considering Mr. Rainwater's declaration and his position in senior management at Albertsons, we, as counsel for Mr. Rainwater in connection with the subpoena, request that Defendants withdraw the deposition subpoena to Mr. Rainwater. In addition, we can confirm that Mr. Rainwater has no documents in his possession responsive to the document portion of the subpoena.

See. Exhibit 4. Notwithstanding that Mr. Rainwater's counsel drew Defendants' attention to the above provisions of the Middle District of Florida Handbook on Civil Discovery Practice, Defendants responded that they had given "careful consideration" to Mr. Rainwater's declaration, but had decided to proceed with his deposition because Mr. Rainwater "had responsibility" for the purchasing of raw milk, and they were entitled to probe his knowledge on that issue. See Exhibit 5. However, given that Mr. Rainwater did not have discussions with any raw milk supplier on the price of raw milk, and did not negotiate any raw milk prices, nor negotiate any agreements for the purchase of raw milk,

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA -8-**

it was incumbent on Defendants to state specifically what information they thought that they would gain from taking Mr. Rainwater's deposition. Defendants failed to do so.

In addition, Defendants know full well that Mr. Rainwater's name is on two inconsequential documents, out of the thousands that have been produced by Defendants and Plaintiffs in the underlying case. So, it is not as if there is a treasure trove of documents that Defendants can show Mr. Rainwater in his deposition. And, if there were, the Handbook would require Defendants to inform Mr. Rainwater of such documents and how they would lead to the discovery of relevant evidence. Given Mr. Rainwater's declaration, the question still left unanswered by Defendants' response is what information that is relevant to the case do they believe that they can elicit from Mr. Rainwater. Defendants have utterly failed to answer this question, as required by the Handbook.

In light of all of the above, and considering Mr. Rainwater's declaration, and Defendants' response, Defendants have not complied with the procedure set forth in the Handbook for taking Mr. Rainwater's deposition. This provides an additional ground for quashing the deposition subpoena.

Finally, Defendants contend that the rules regarding apex depositions – which require Defendants to seek the information from lower level employees first – do not apply to Mr. Rainwater because he is not a senior executive of a party. However, the burden on Mr. Rainwater, as a non-party witness, is even greater than the burden on a senior executive of a party.

## CONCLUSION

For each of the foregoing reasons, Mr. Rainwater respectfully requests that the Subpoena requiring his appearance at a deposition be quashed.

RESPECTFULLY SUBMITTED March 15, 2018,

                                  Varin Wardwell LLC

                                  By: _____
                                  J. Will Varin
                                  Attorneys for Evan Rainwater

OF COUNSEL:

Patrick J. Ahern
Christopher Stuart
Liana Alston
Ahern and Associates, P.C.
8 South Michigan Avenue
Suite 3600
Chicago, IL 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA -10-**