# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| In re Matter of Deposition Subpoena Served on Evan Rainwater | Case No.: 1:18-MC-10051-EJL<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION TO QUASH DEPOSITION SUBPOENA**<br><br>**(Docket No. 1)** |

Pending before the Court is Evan Rainwater's Motion to Quash Deposition Subpoena (Docket No. 1). This Motion has been referred to the undersigned for decision by the Honorable Edward J. Lodge. Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

Winn-Dixie sued the Defendants (dairy cooperatives and a federation of dairy cooperatives) in the United States District Court for the Middle District of Florida for their alleged violation of the Sherman Act. Winn-Dixie claims that Defendants inflated the price of raw milk by operating a program – the Herd Retirement Program (the "HRP") – that subsidized the sale of dairy herds into the beef market between 2003 and 2010, a step which reduced the number of milk cows and therefore also reduced the amount of raw milk. Winn-Dixie alleges damages from having to pay higher negotiated premiums for raw milk than it would have paid absent the HRP. In response, Defendants assert that the HRP was widely publicized within the dairy industry and the general public throughout its existence. Winn-Dixie disputes this, denying that its employees were ever aware of the HRP.

To help substantiate their defenses, Defendants issued a subpoena (to give testimony and produce documents) to Evan Rainwater. Mr. Rainwater currently resides in Idaho, where he

**MEMORANDUM DECISION AND ORDER - 1**

works in upper management for Albertsons, Inc.[1]  However, he was Winn-Dixie's Vice President of Manufacturing from 2002 through 2005 and, according to Defendants, was responsible for Winn-Dixie's raw milk purchases that form the basis of a significant portion of the $21 million damages (potentially trebled) that Winn-Dixie seeks from Defendants.

Mr. Rainwater says he knows nothing of relevance about the facts underlying the lawsuit, and has provided a sworn declaration stating that he did not have discussions with any raw milk supplier regarding raw milk prices; did not negotiate prices of raw milk, nor any agreements for the supply of raw milk; and had never heard of the HRP before receiving the subpoena.  Mr. Rainwater therefore believes that he should not have to appear for a deposition in such circumstances and has moved to quash Defendants' subpoena accordingly.  He argues that (1) he has no information relevant to the underlying lawsuit and sitting for the deposition would cause an undue burden on him, and (2) Defendants failed to comply with the Middle District of Florida's Handbook on Civil Discovery Practice (the "Handbook") when seeking to depose Mr. Rainwater.

Defendants counter that they are entitled to probe Mr. Rainwater's knowledge (or claimed lack of knowledge) in light of the HRP's alleged well-documented history,[2] particularly given an alleged implausibly small production of documents by Winn-Dixie from the period Mr. Rainwater was employed there.  Defendants also argue that the Handbook is neither binding in

---

[1] Mr. Rainwater is currently the Senior Vice President and General Manager of Manufacturing for Albertsons, Inc. ("Albertsons"), located in Boise, Idaho.

[2] Defendants have raised numerous affirmative defenses, including that Winn-Dixie's claims are barred by applicable statutes of limitation because Winn-Dixie knew or should have known about the HRP.  Defendants also assert that, to the extent that Winn-Dixie has alleged facts based on fraudulent concealment, it could not establish the elements of that claim.  Defendants believe that Mr. Rainwater has direct knowledge, or knowledge that is likely to lead to the discovery of admissible evidence, about facts that would assist Defendants in establishing these affirmative defenses.

**MEMORANDUM DECISION AND ORDER - 2**

Florida, nor even applicable to subpoenas issued in Idaho, but that its requirements were nonetheless satisfied after Defendants supplied specific reasons for Mr. Rainwater's deposition in writing.

## **ANALYSIS**

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena, providing, among other things, that a party may command a non-party to testify at a deposition and produce designated documents. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b).[3] *See Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 3162218, at *2 (N.D. 2016) (citing Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970)). With this in mind, Rule 45 states that a Court *must* quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

"The Ninth Circuit has long held that non-parties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. 2016); *see also United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982) ("Non-

---

[3] Rule 26(b) provides that:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defenses and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. . . .

On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii).

**MEMORANDUM DECISION AND ORDER - 3**

party witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."). Courts in the Ninth Circuit – including this Court – have consequently held that, on a motion to quash a subpoena, the moving party has the burden of persuasion, but that the party issuing the subpoena must demonstrate that the discovery sought is relevant and material to the allegations and claims at issue in the proceedings. *See Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Group, Inc.*, 2013 WL 6446704, at *3 (D. Idaho 2013) (citations omitted). "In all controverted cases, it is up to the court to strike a balance among the degree of relevance of the requested material, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules." *Id*. (citing 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. 2013)). Against this standard, for the reasons discussed below, Mr. Rainwater's arguments in favor of quashing Defendants' subpoena are not persuasive and, thus, his Motion to Quash Deposition Subpoena is denied.

First, the information sought from Mr. Rainwater is unquestionably relevant in the context of the parties' claims and defenses in the underlying lawsuit. From 2002 to 2005, Mr. Rainwater oversaw Winn-Dixie's raw milk procurement and, because the underlying lawsuit involves Winn-Dixie's purchase of raw milk at higher prices during this time (allegedly *because of* the HRP administered by Defendants), it cannot be said that Mr. Rainwater's deposition amounts to an idle exercise. In short, the information Defendants seek via Mr. Rainwater's deposition is relevant. That Mr. Rainwater may not remember the particulars of Winn-Dixie's raw milk purchases generally or the existence of the HRP specifically,[4] does not change the fact

---

[4] It is worth mentioning that, within his declaration, Mr. Rainwater states that "[his] knowledge relating to [the] subject matter of the [underlying lawsuit] is very *limited*." Rainwater Decl., ¶ 3 (Docket No. 1-4) (emphasis added). Mr. Rainwater understandably does not disclaim *all* knowledge (how could he, really?) relating to the underlying lawsuit and, as a result,

**MEMORANDUM DECISION AND ORDER - 4**

that the information sought from him remains relevant and material to the parties' respective positions.[5]

Second, there is no dispute that submitting to a deposition, party or non-party, is burdensome on several levels – especially here, with Mr. Rainwater now an executive at Albertsons. But a burden alone is not enough to quash a subpoena; instead, Rule 45 requires that the burden be "undue" before a court must quash or modify a subpoena. *See supra*; *see also U.S. v. $160,066.98 from Bank of Am.*, 202 F.R.D. 624, 628 (9th Cir. 2001) ("'Undue' burden requires parties to show more than expense or difficulty."). Here, the Court is satisfied that there is no intent on Defendants' part to harass or purposely inconvenience Mr. Rainwater by deposing him. To be sure, they are willing to conduct Mr. Rainwater's deposition in Idaho and, keeping in mind his work schedule, conduct the deposition at a time that is convenient to him. *See* 2/19/18 Ltr. from Defs.' Counsel to Rainwater, attached as Ex. 1 to Mem. in Supp. of Mot. to Quash (Docket No. 1-2) ("On behalf of the Defendants in the [underlying lawsuit], we look forward to working cooperatively with you and your counsel on matters of convenience, including finding a mutually agreeable date for your deposition if you are not available on the date we included in your subpoena."). Thus, though a burden in the sense that any deposition represents an inconvenience to a busy professional, its severity in this instance does not rise to the level of being undue. Simply put, there is no indication that, by preparing for and attending his deposition, Mr. Rainwater cannot still tend to his current responsibilities at Albertsons – particularly if the

---

Defendants are permitted to explore the boundaries of that knowledge – even if limited. Moreover, on this record, it may be the case that, even if true, Mr. Rainwater's complete lack of knowledge remains pertinent to Defendants' defenses to Winn-Dixie's claims, and Defendants are entitled to obtain such evidence, particularly when the witness otherwise is not subject to being summoned to the Florida federal court for trial.

[5] Otherwise, an individual could avoid being deposed simply by stating that he has no knowledge about the subject-matter of the at-issue litigation. The Court will not go there.

**MEMORANDUM DECISION AND ORDER - 5**

deposition is more form than substance (and, hence, limited in scope and duration), owing to Mr. Rainwater's claimed lack of knowledge about the underlying lawsuit.

Third, while it is true that Mr. Rainwater is a non-party witness to the underlying lawsuit, he was an integral employee with a former employer, Winn-Dixie, which is now pursuing multi-million-dollar claims against Defendants that relate, at least in organizational structure, to Mr. Rainwater's duties while at Winn-Dixie. So, it would seem that Mr. Rainwater's technical status as a non-party witness is therefore a "horse of a different color" when compared to those cases involving non-party witnesses whose conduct does not directly contribute to the issues at play. *See, e.g.*, *Rocky Mountain*, 2013 WL 6446704 (D. Idaho 2013) (non-party surgical center that defendants believed plaintiffs accused them of unlawfully delaying vis à vis plaintiffs' interference with prospective economic advantage claim). As such, any "special weight" accorded to non-parties in those more-removed circumstances does not neatly or fully apply here.[6]

Fourth, Defendants' efforts before subpoenaing Mr. Rainwater are notable. That is, up until that point, Winn-Dixie had produced only 120 documents which, according to Defendants, "contain[ed] largely irrelevant information" and "le[ft] many unanswered questions with respect to the background facts that date back to a critical window of time during which Mr. Rainwater was a Vice President at Winn-Dixie." Opp. to Mot. to Quash, pp. 5-6 (Docket No. 2). Further, the record reflects that Winn-Dixie has not identified (either by Rule 30(b)(6) designations, Rule 26(a)(1) disclosures, or within its written discovery responses to date) individuals with personal

---

[6] This reality also highlights the inconsequence of the passage of time since Mr. Rainwater was with Winn-Dixie. That is to say that Mr. Rainwater's particular knowledge of Winn-Dixie's milk procurement practices during the relevant time frame exists whether he is still employed with Winn-Dixie or not, and also exists independent of the amount of time that may have lapsed between then and now.

**MEMORANDUM DECISION AND ORDER - 6**

knowledge of the facts underlying Winn Dixie's allegations or, likewise, information germane to Defendants' defenses – including information relating to the topics on which Defendants seek to question Mr. Rainwater. With this backdrop, Defendants are permitted to proceed with Mr. Rainwater's deposition to learn more. If Mr. Rainwater doesn't have any knowledge on these subjects, who does?[7]

Finally, without addressing whether the Handbook guidelines even extend to subpoenas issued in an Idaho federal court, those guidelines do not preclude Mr. Rainwater's deposition in any event. Winn-Dixie attempts to shoehorn certain provisions making mention of "an officer, director, or managing agent of any entity," as well as "an organization's senior management,"[8]

---

[7] In his declaration, Mr. Rainwater identified Dwight Moore as the person who would know the most about Winn-Dixie's milk purchasing. *See* Rainwater Decl., ¶ 3 (Docket No. 1-4) ("To the extent that anyone at Winn-Dixie may have had any such discussions, it would have been Dwight Moore, Director of Dairy Operations, who reported to me."). Winn-Dixie never previously disclosed Mr. Moore as someone with knowledge of the facts leading up the underlying lawsuit. In this setting, and consistent with Rule 26, Defendants are now entitled to depose Mr. Rainwater on *who else* within Winn-Dixie has knowledge, in addition to deposing him about the direct relevant information he has relating to the parties' claims and defenses.

[8] In relevant part, the Handbook reads:

> 5.  <u>If an Officer Lacks Knowledge</u>. *Whenever an officer, director, or managing agent of an entity is served with a deposition notice or subpoena that contemplates testimony on a subject about which the witness lacks knowledge or information, that individual may submit to the noticing party, reasonably before the date noticed for the deposition, an affidavit or declaration under penalty of perjury so stating and identifying a person within the entity, if any, having knowledge of the subject matter. The noticing party should then proceed with the deposition of the officer, director, or managing agent initially noticed or subpoenaed only after careful consideration and for a specific reason, provided to the deponent in writing in advance of the deposition.*
>
> 6.  <u>Consideration for an Organization's Senior Management</u>: *If information is sought from an organization, counsel ordinarily should not seek in the first instance to take the deposition of the organization's senior management if someone else in the organization can be expected to have more direct and firsthand knowledge or information. Depositions are not properly used as*

**MEMORANDUM DECISION AND ORDER - 7**

into its arguments in favor of quashing Mr. Rainwater's subpoena. However, Mr. Rainwater cannot claim protection under these provisions because he is no longer at Winn-Dixie. *See* Handbook, ¶ II(A)(6), attached as Ex. 2 to Mem. in Supp. of Mot. to Quash (Docket No. 1-3) (purpose of provisions is to prevent lawsuit from "distract[ing] senior management who may not be immediately involved in the dispute"). Regardless, in addition to *Winn-Dixie* not identifying individuals with knowledge of its claims (*see supra*), Defendants have satisfied the requirement to provide in writing a specific reason for Mr. Rainwater's deposition, stating:

> Defendants have reviewed and carefully considered Mr. Rainwater's declaration. Notwithstanding his declaration, we intend to depose Mr. Rainwater pursuant to the subpoena we served on him. Mr. Rainwater was Vice President of Manufacturing at Winn-Dixie Stores, Inc. from 2002 through 2005, which is part of the relevant time period of plaintiff's complaint. As Vice President of Manufacturing, Mr. Rainwater was responsible for overseeing raw milk purchasing for Winn-Dixie, among other things, which relate directly to the subject matter of this case. Indeed, Winn-Dixie's raw milk purchases account for a significant portion of plaintiffs' claimed damages. While Mr. Rainwater states in his declaration that his knowledge related to the subject matter of this case is "very limited," he does not and cannot disclaim all knowledge. Defendants are entitled to probe the extent of his knowledge of the issues in this case, and to question him about all matters related to plaintiffs' claims and defendants' defenses.

3/12/18 email from Defs.' Counsel to Winn-Dixie's Counsel, attached as Ex. 5 to Mem. in Supp. of Mot. to Quash (Docket No. 1-6). The Court is satisfied that the "specific reason" provided by Defendants to the Plaintiff is legitimately raised. Accordingly, the Handbook's provisions cannot prevent Mr. Rainwater's deposition from taking place.

///

///

---

a mechanism to inconvenience or distract senior management who may not be immediately involved in the dispute.

Handbook, ¶¶ II(A)(5-6), attached as Ex. 2 to Mem. in Supp. of Mot. to Quash (Docket No. 1-3) (emphasis added).

**MEMORANDUM DECISION AND ORDER - 8**

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that Non-Party Witness Evan Rainwater's Motion to Quash Deposition Subpoena (Docket No. 1) is DENIED. In the event the deposition proceeds, its terms, including duration, shall be governed by whatever discovery limits otherwise apply in the underlying lawsuit, and applicable federal rules.[9]

DATED: May 4, 2018

Ronald E. Bush
Chief U.S. Magistrate Judge

---

[9] The Court notes that the Handbook guidelines follow Rule 30(d)(1) and limit a deposition "to one day of seven hours unless otherwise authorized by the Court or stipulated by the parties" and that "[t]his is generally interpreted to mean seven hours of actual testimony, and does not include time spent for meals, rest, or refreshment." Handbook, ¶ II(A)(1), attached as Ex. 2 to Mem. in Supp. of Mot. to Quash (Docket No. 1-3).

**MEMORANDUM DECISION AND ORDER - 9**